**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ROY B. RAY, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-07-2967 |
| | § | |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, | § | |
| | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Roy B. Ray, Jr. has sued his former employer, the United States Department of Homeland Security ("DHS"), alleging invasion of privacy, defamation, wrongful suspension, wrongful discharge, malicious prosecution, and violations of his right to substantive and procedural due process under the United States Constitution. (Docket Entry No. 1). The DHS has moved to dismiss Ray's claims under Rule 12(b)(1) and Rule 12(b(6) of the Federal Rules of Civil Procedure, for lack of subject-matter jurisdiction and for failure to state a claim. (Docket Entry No. 8). Ray has responded, (Docket Entry No. 11), and the DHS has replied, (Docket Entry No. 13). Ray has also moved to abate this case to permit exhaustion of administrative remedies. (Docket Entry No. 14). The DHS has responded. (Docket Entry No. 15).

Based on a careful review of the motions, responses, and replies; the parties' submissions; and the applicable law, the DHS's motion to dismiss is granted. Ray's motion

to abate is denied as moot.  Ray may amend to address the pleading deficiencies, consistent with Rule 11, no later than **August 25, 2008**.  The reasons for these rulings are explained in detail below.

## I.     Background

Ray was hired in 2002 as a Transportation Security Officer, or screener.  Ray was hired by the Transportation Security Administration ("TSA"), part of DHS.  As part of his 2002 employment application, Ray completed a Standard Form (SF) 85P, Questionnaire for Public Trust Positions.  He signed a certification stating that his answers in the SF 85P form were "true, complete, and correct."  (Docket Entry No. 8, Ex. 4).  The SF 85P form requires an applicant to disclose all previous criminal offenses that the applicant has been "arrested for, charged with, or convicted of" within the last seven years.  (*Id.*, Ex. 3, Attachment 1 at 2).  Ray also submitted a completed Optional Form (OF) 306, Declaration for Federal Employment.  The events at issue arise from Ray's failure to include information about prior arrests (in 1990, 1996, and 1998) on the SF 85P form as well as on the OF 306 form.

In March 2006, the DHS Office of Inspector General (OIG) began investigating security clearance forms for screeners at the Houston airport.  After interviewing Ray and reviewing his security file, the OIG determined that "there were reasonable grounds to believe that Mr. Ray had violated federal law by failing to disclose relevant aspects of his police record" on the SF 85P form.  (Docket Entry No. 8 at 2).  Ray had not disclosed on the SF 85P form that he had been arrested for driving under the influence in 1990, for reckless conduct in 1996, and for domestic violence in 1998.  The OIG gave the results of its

investigation, including excerpts from Ray's security file and the SF 85P form, to the U.S. Attorney's Office for the Southern District of Texas, as required by the Inspector General Act, 5 U.S.C. App. 3 § 4.[1]

On March 21, 2006, Deputy Federal Security Director Hector Vela met with Ray about the charge of falsifying the SF 85P form. Ray admitted that he had neglected to disclose his previous offenses on the form. Ray explained that he did not disclose his 1990 DUI arrest and 1996 reckless conduct arrest because they had occurred more than seven years earlier. He explained that he did not disclose his 1998 domestic violence arrest because that charge had been dropped. After this meeting, on the same day, Vela notified Ray in writing that he was suspended indefinitely, without pay, pending further investigation into the alleged misconduct of failing to disclose all previous criminal offenses. Vela explained that "the SF 85P clearly requires you to list all previous offenses which you have been 'arrested for, charged with, or convicted of' within the last seven years." (Docket Entry No. 8, Ex. 3, Attachment 1 at 2). Vela stated that "[i]t is important that both TSA and the flying public have confidence that you will perform your duties with integrity" and that Ray's alleged misconduct, if proven true, would negatively affect "TSA's ability to maintain the public's trust and confidence." (*Id.*, Ex. 3, Attachment 1 at 2). Vela's memo to Ray

[1] Section 4(d) of the Inspector General Act requires each Inspector General to "report expeditiously to the Attorney General whenever the Inspector General has reasonable grounds to believe there has been a violation of Federal criminal law."

explained that he could appeal his indefinite suspension to the TSA's Disciplinary Review Board within 30 days and explained the appeals procedure.  (*Id.*, Ex. 3, Attachment 1 at 3).

On April 3, 2006, a federal grand jury returned an indictment charging Ray with violating 18 U.S.C. § 1001(a)(3), which prohibits anyone "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States" from "knowingly and willfully" making or using "any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or representation."  On the same day, the U.S. Attorney's Office in the Department of Justice issued a press release about the indictments of six TSA employees, including Ray, who had been charged with making false statements in violation of 18 U.S.C. § 1001(a)(3).

On April 4, 2006, Ray resigned from the TSA.  He submitted a handwritten note that stated as follows:

> To Ms[.] Linda Redding,
>
> Due to stress and work related issues I hereby resign my duties as Screener for the Transportation Security Administration (TSA).  Effective Immediat[el]y.
>
> Thank you,
>
> <signature>
>
> Roy B Ray Jr.

(Docket Entry No. 8, Ex. 6).  On June 6, 2006, the United States Attorney moved to dismiss Ray's indictment.  (*Id.*, Ex. 7).  The motion to dismiss was granted.

On July 7, 2006, the TSA received a letter from Jimmie L. J. Brown, Jr. demanding that Ray be reinstated and receive back pay, restoration of lost benefits, retirement, attorney's fees, damages for mental anguish, and a public retraction of the statements made in the press release. (Docket Entry No. 8, Ex. 9, Attachment 1). Brown's letter based these claims on the DHS's alleged violation of 42 U.S.C. § 1983, deprivation of due process, a taking, and defamation. On August 16, 2006, the TSA's Office of Chief Counsel responded in writing, advising Brown that his July 7, 2006 letter was "insufficient to assert a claim on behalf of Mr. Ray under the Federal Tort Claims Act" because Ray had neither signed the letter nor shown that he had authorized Brown to act on his behalf, as required by 28 C.F.R. § 14.2(a).[2] (*Id.*, Ex. 9, Attachment 2 at 1). In the letter, the Office of Chief Counsel explained how Ray could assert a proper and timely claim under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), *et seq.*

On August 25, 2006, Ray, represented by Brown, appealed his indefinite suspension to the TSA's Disciplinary Review Board. Ray asserted that he had disclosed his previous arrests on the OF 306 form submitted with his employment application and that he had

---

[2] Title 28 C.F.R. § 14.2(a) states:

> For purposes of the provisions of 28 U.S.C. 2401(b), 2672, and 2675, a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident; and the title or legal capacity of the person signing, and is accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative.

omitted the arrests on the SF 85P form only because he did not know that disclosure was necessary.  Ray argued, and TSA did not dispute, that the fact that he had disclosed the previous arrests on the OF 306 form "led directly to the dismissal of the indictment." (Docket Entry No. 8, Ex. 3, Attachment 2 at 3 n.3).

On March 28, 2007, the Board issued an opinion and decision on Ray's appeal.  The Board found that despite Ray's failure to disclose his previous arrests on the SF 85P form, "there is no evidence that because of those omissions, the appellant's presence at the worksite would represent a 'threat to life, property, safety or the effective operation of the workplace.'"  (*Id.*, Ex. 9, Attachment 2 at 3).  The Board determined that under the TSA's disciplinary policy, Ray "should not have been subject to indefinite suspension until April 3, 2006, when he was indicted for a crime for which a sentence of imprisonment could be imposed."  Ray's indefinite suspension "as imposed on March 21, 2006" was "erroneous and not authorized by TSA policy."  (*Id.*, Ex. 9, Attachment 2 at 3–4).  The Board also found that Ray had voluntarily resigned on April 4, 2006.  The Board concluded:

> The appellant's records will be corrected to show his employment status from March 21, 2006 until April 2, 2006 to be Administrative Leave.  From April 3, 2006 [the date of Ray's indictment] until his resignation on April 4, 2005, the appellant's employment status will remain Indefinite Suspension.  The appellant will receive back pay for the above referenced period of administrative leave, subject to TSA rules and regulations.

(*Id.*, Ex. 9, Attachment 2 at 4).  The Board considered only Ray's appeal from the indefinite suspension because any claims Ray had for events that occurred after his voluntary

resignation were "not within the jurisdiction of the [Board]." (*Id.*, Ex. 9, Attachment 2, at 4).

On April 6, 2007, the TSA moved for reconsideration of the Disciplinary Review Board's decision on the ground that Ray filed his appeal more than thirty days after his suspension began, making it untimely. The Board denied the TSA's motion on April 25, 2007. The Board found that there was good cause to consider Ray's appeal as timely filed because of the nature of the events that followed his indictment and resignation. (Docket Entry No. 8, Ex. 11). The Board explained:

> For purposes of determining the timeliness of this appeal–which was considered by the DRB in its discussion and deliberation on this case–the Board applied a "totality of circumstances" test. The Board generally applies the 30 day standard from the date of termination of an indefinite suspension. Technically, Mr. Ray's suspension was terminated by the effect of his resignation on April 4, 2006, so his nominal deadline was May 4, 2006.
>
> However, on that date, the events related to this action were not really complete. When Mr. Ray's attorney established that he was indicted based upon incomplete information and–when the facts were known–the indictment was dismissed on June 6, 2006, by the US District Court on motion of the U.S. Attorney. On July 5, 2006, Mr. Ray, through his counsel, sought reinstatement and other relief from TSA Management at IAH, which was denied on August 11, 2006. Only then did Mr. Ray re-focus his attention on the original action, and submit an appeal to the DRB, on August 25, 2006. Thus, the appeal to the DRB was filed within 30 days of TSA's denial of Mr. Ray's request for reinstatement at IAH.
>
> Because of the continuum of the foregoing events, the appeal was arguable timely. In any event, the current DRB management directive specifically allows for the Board to consider "good cause" in determining whether or not to

> mechanically apply the 30 day time limit. The Board considered the totality of the circumstances presented by the evidence in the file and determined that there was ample good cause–including the interests of justice–to consider Mr. Ray's appeal as timely.
>
> Specifically, the Board found that Mr. Ray was wrongly suspended without pay by TSA management at IAH. He was on indefinite suspension without pay from March 21, 2006, until his resignation on April 4, 2006, the day after he was indicted. Faced with the potential of a Federal felony prosecution, Mr. Ray stated that he resigned to obtain funds (for his defense) by cashing in his TSP retirement account. Not surprisingly, at that point, Mr. Ray's attention appears to have been focused on primarily the possibility of his incarceration, rather than on his status of being on suspension without pay.
>
> In sum, it struck the Board members that Mr. Ray was wronged by TSA management, wronged by the U.S. Attorney, and out of a job–all through no misconduct or fault on his part. Considering the impact of this chain of events, the Board concluded that it constituted "good cause" for Mr. Ray's apparent tardiness in filing his appeal with the DRB.

On August 31, 2007, Ray received back pay for the period between March 21, 2006 and April 2, 2006.

On September 13, 2007, Ray sued the DHS, alleging wrongful suspension and discharge, malicious prosecution, defamation, *Bivens* claims for malicious prosecution and violations of substantive and procedural due process, and violations of the Privacy Act. The DHS has moved to dismiss Ray's claims for lack of subject-matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under 12(b)(6). (Docket Entry No. 8). Ray has responded, (Docket Entry No. (Docket Entry No. 11), and the DHS has replied, (Docket Entry No. 13). The parties' arguments are addressed below.

## II.     The Legal Standards

### A.     Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject-matter jurisdiction.  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir.1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir.1996)).  "Courts may dismiss for lack of subject matter jurisdiction on any one of three bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir.1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.1981)).  The plaintiff bears the burden of demonstrating that subject-matter jurisdiction exists. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir.1981).  When examining a factual challenge to subject-matter jurisdiction under Rule 12(b)(1), which does not implicate the merits of plaintiff's cause of action, the district court has substantial authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir.1997).

**B. Rule 12(b)(6)**

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b) (6). The Supreme Court recently clarified the standards that apply in a motion to dismiss for failure to state a claim. In *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007), the Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A court must not dismiss a complaint for failure to state a claim unless the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S.Ct. at 1974; *see also Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007). Although material allegations in the complaint must be accepted as true and construed in the light most favorable to the nonmoving party, a court is not required to accept conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.

In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto. Fed. R. Civ. P. 12(b)(6). Various circuits have specifically allowed that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir.1993); *see also Field v. Trump*, 850 F.2d 938, 949 (2d Cir.1998). In so attaching, the defendant merely assists the plaintiff in establishing the basis

of the suit, and the court in making the elementary determination of whether a claim has been stated. The Fifth Circuit has approved of this practice. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir.2000).

When a plaintiff's complaint is dismissed for failure to state a claim, the plaintiff should generally be given at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir.2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."). A plaintiff should be denied leave to amend a complaint if the court determines that "allegations of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir.1986); *see also Great Plains Trust Co.*, 313 F.3d at 329; *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1996).

## III. The DHS's Motion to Dismiss Under Rule 12(b)(1)

### A. Ray's Common-Law Tort Claims: Failure to Exhaust

The DHS asserts that this court lacks jurisdiction over Ray's common-law tort claims for malicious prosecution, defamation, wrongful suspension, and wrongful discharge because Ray failed to meet the jurisdictional prerequisites to filing a claim against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671, *et seq*. (Docket Entry No. 8 at 13–15, Docket Entry No. 13 at 1–2). The DHS contends that Ray failed to "present his

claim to TSA in accordance with the FTCA's exhaustion requirement" because he did not sign the demand letter his counsel sent to the TSA or provide evidence that he had authorized his counsel to act on his behalf. (Docket Entry No. 8 at 14). Ray asserts that he has exhausted applicable administrative remedies. (Docket Entry No. 11 at 9–14).

The FTCA waives sovereign immunity for monetary damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. §§ 1346(b) (1997). "The requirement of exhaustion of administrative review is a jurisdictional requisite to the filing of an action under the FTCA." *Gregory v. Mitchell*, 634 F.2d 199, 203–04 (5th Cir. 1981); *see also Southern v. United States*, 503 F. Supp. 2d 829, 834 (W.D. Tex. 2007). "As a jurisdictional prerequisite to bringing a lawsuit under the Federal Tort Claims Act, a plaintiff is required to first present his or her claim to the appropriate Federal agency." *Frantz v. United States*, 29 F.3d 222, 224 (5th Cir. 1994) (internal punctuation omitted) (citing 28 U.S.C. § 2675(a)). "The exhaustion requirement is a jurisdictional bar, and thus 'a litigant may not base any part of a tort action against the United States on claims not presented to the appropriate administrative agency.'" *Southern*, 503 F. Supp. 2d at 835 (quoting *Rise v. United States*, 630 F.2d 1068, 1071 (5th Cir. 1980)).

Title 28 U.S.C. § 2675(a) states:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting

> within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a) (1966). Title 28 U.S.C. § 2401(b) further states:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b) (1978).

The notice requirement of sections 2675(a) and 2401(b) provides an agency with a "meaningful opportunity to resolve the matter without the necessity of judicial intervention." *Montoya v. United States*, 841 F.2d 102, 104 (5th Cir. 1988). As the Fifth Circuit has explained:

> Congress instituted the presentation requirement to ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States. Section 2675(a) is satisfied, therefore, if the claimant (1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate and (2) places a value on his or her claim.

*Frantz*, 29 F.3d at 224 (quoting *Adams v. United States*, 615 F.2d 284, 289, *clarified*, 622 F.2d 197 (5th Cir. 1980)). The purpose of section 2675 "will be served as long as a claim

brings to the Government's attention facts sufficient to enable it thoroughly to investigate its potential liability and to conduct settlement negotiations with the claimant." *Id.* (quoting *Rise*, 630 F.2d at 1071).

The DHS cites 28 C.F.R. §14.2(a) to support its argument that Ray has failed to "present" his claim to TSA in accordance with the FTCA's exhaustion requirement. (Docket Entry No. 8 at 14). That section provides:

> For purposes of the provisions of 28 U.S.C. 2401(b), 2672, and 2674, a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident; and the title or legal capacity of the person signing, and is accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative.

28 C.F.R. § 14.2(a) (2008). The DHS argues that "Brown's demand letter on Mr. Ray's behalf is legally insufficient for [the purposes of exhaustion] because it was not signed by Mr. Ray, nor did it include any evidence that Mr. Brown was authorized to act on Mr. Ray's behalf" under section 14.2(a). (Docket Entry No. 8 at 14).

The DHS's reliance on section 14.2(a) is misplaced. The Fifth Circuit has held that the present requirement of section 2675(a) "is satisfied . . . if the claimant (1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate and (2) places a value on his or her claim." *Frantz*, 29 F.3d at 224; *see also Tucker v. U.S. Postal*

*Serv.*, 676 F.2d 954, 957–59 (3d Cir. 1982) ("This information alone [notice of the claim sufficient to enable the agency to investigate and a value on the claim] allows the claimant to maintain a subsequent action in the district court following the denial of his or her claim by the agency or the passage of six months.").  The DHS does not dispute that Ray's demand letter gave the TSA notice of his claim and provided information about the damages he sought.

Courts have held that the section 14.2 regulations, which were "promulgated pursuant to 28 § U.S.C. 2672 (which defines the settlement authority of government agencies)," are not "jurisdictional requirements for submission of administrative claims under § 2675." *Jama v. U.S. I.N.S.*, 22 F. Supp. 2d 353, 368 (D.N.J. 1998).  The regulations promulgated in 28 C.F.R. §§ 14.1–14.11 "go far beyond the notice requirement of section 2675." *Tucker*, 676 F.2d at 959.  A claimant must comply with all the section 2675 requirements if the claimant "wishes to settle his or her claim with the appropriate agency," but there is no requirement "that claimants must settle with the relevant federal agency . . . in order to preserve their right to sue."  *Id.*  The *Jama* court noted:

> Given that the procedural requirements of the regulations and the jurisdictional requirements of § 2675 are not identical, the mere inclusion in the regulations of a requirement for evidence of authority does not confer jurisdictional significance upon it. Further, the presentation of such evidence would not seem essential to the minimal notice required under § 2675.

*Jama*, 22 F. Supp. 2d at 369.

Courts have found that "the appearance of an attorney for a party raises a presumption that the attorney has the authority to act on that party's behalf." *Leaty v. U.S.*, 748 F. Supp. 268, 273 (D.N.J. 1990) (quoting *Graves v. United States Coast Guard*, 692 F.2d 71, 74 (9th Cir. 1982)); *see also Fisher v. United States*, 538 F. Supp. 2d 344, 347 (D. Mass. 2008) (holding that attorney's presentment letter, which stated that attorney had been retained by plaintiff with respect to the claimed injuries, was sufficient to establish authority in the notice stage of the claim); *Jama*, 22 F. Supp. 2d at 369. The failure to provide evidence of an attorney's authority "might rightly deprive a claimant of a chance to settle a claim, but . . . should not be fatal to jurisdiction." *Id.*

On July 7, 2006, Jimmie L. J. Brown, Jr. sent a letter to TSA asserting tort claims on Ray's behalf. (Docket Entry No. 8, Ex. 9, Attachment 1). On August 16, 2006, the TSA's Office of Chief Counsel responded and advised Brown that his July 7, 2006 letter was "insufficient to assert a claim on behalf of Mr. Ray under the Federal Tort Claims Act" because Ray had neither signed the letter nor shown that he had authorized Brown to act on his behalf, as required by 28 C.F.R. § 14.2(a). (*Id.*, Ex. 9, Attachment 2 at 1). The Office of Chief Counsel explained how Ray could assert a proper and timely claim under the FTCA. It is undisputed that neither Brown nor Ray have sent additional information responding to the August 16, 2006 letter from the Office of Chief Counsel.

Ray's failure to provide evidence of Brown's authority to assert claims on his behalf does not deprive this court of jurisdiction over Ray's tort claims. *See Jama*, 22 F. Supp. 2d at 369. The July 7, 2006 letter Brown submitted provided TSA with notice. TSA had

sufficient information to investigate Ray's claim and to understand the value Ray placed on his claim.  The letter satisfied the presentment requirement of § 2675.  *See Frantz*, 29 F.3d at 224.  The motion to dismiss Ray's tort claims for failure to exhaust administrative remedies is denied.  Ray's motion to abate to permit him to exhaust is moot.

**B.    Ray's Wrongful Suspension, Discharge, and Privacy Act Claims:
        Lack of Jurisdiction to Review the TSA's Employment Decisions**

The DHS argues that this court lacks subject-matter jurisdiction over Ray's nonconstitutional federal claims challenging the TSA's employment decisions because the Aviation and Transportation Security Act ("ATSA"), 49 U.S.C. § 44935 note, grants the Under Secretary of Transportation for Security "exclusive authority over Screeners' personnel actions . . . without regard for Title 5 provisions that typically govern federal employees' rights." (Docket Entry No. 8 at 11).  Ray alleged claims for wrongful suspension and discharge and Privacy Act violations arising from the TSA's employment decisions.  The DHS argues that the ATSA "expressly exempt[s] a category of employees from the [Civil Service Reform Act]," such that TSA employees cannot rely on the CSRA to challenge personnel actions or pursue "judicial remedies they would have otherwise had in the absence of the CSRA."  (*Id.* at 11–12).  The DHS moves to dismiss Ray's nonconstitutional causes of action "challenging his indefinite suspension and/or his alleged wrongful discharge, as well as his claim under the Privacy Act that would effectively circumvent this bar."  (*Id.* at 12).  In response, Ray argues that "[n]o Supreme Court opinion holds squarely that the CSRA

always prevents federal employees from bringing *Bivens* actions to right job-related wrongs." (Docket Entry No. 11 at 14).

Section 111(d) of the ATSA, codified at the note to 49 U.S.C. § 44935, states:

> (d) Screener Personnel.—Notwithstanding any other provision of law, the Under Secretary of Transportation for Security may employ, appoint, discipline, terminate, and fix the compensation, terms, and conditions of employment of Federal service for such a number of individuals as the Under Secretary determines to be necessary to carry out the screening functions of the Under Secretary under section 44901 of title 49, United States Code. The Under Secretary shall establish levels of compensation and other benefits for individuals so employed.

49 U.S.C. § 44935 note. The DHS argues that this court lacks jurisdiction to review TSA's employment decisions over "Screener Personnel" because ATSA section 111(d) "grants the Under Secretary of Transportation for Security—now the TSA Administrator—exclusive authority over Screeners' personnel actions." (Docket Entry No. 8 at 11). Quoting *Pellerin v. Veterans Admin.*, 790 F.2d 1553 (11th Cir. 1986), the DHS further argues that the Privacy Act "may not be employed as a skeleton key for reopening consideration of unfavorable federal agency decisions." (*Id.* at 13).

Courts have found that the language "notwithstanding any other provision of law" in section 111(d) "confers upon the Under Secretary greater flexibility regarding screener positions than he or she may have with respect to other classes of employees." *Conyers v. Merit Systems Protection Bd.*, 388 F.3d 1380, 1382 (Fed. Cir. 2004); *see also Castro v. Sec'y of Homeland Sec.*, 472 F.3d 1334, 1337 (11th Cir. 2006) ("We read the phrase 'notwithstanding any other provision of law' as Congress's indication that the statute

containing that language is 'intended to take precedence over any preexisting or subsequently enacted legislation on the same subject." (internal punctuation and citations omitted)); *Am. Fed'n of Gov't Employees TSA Local 1 v. Hawley*, 481 F. Supp. 2d 72, 83 (D.D.C. 2006) ("The plain text of the statute shows that Congress intended to invest the TSA Under Secretary with authority to exempt security screeners from the employee protections of otherwise applicable federal personnel laws."); *Springs v. Stone*, 362 F. Supp. 2d 686, 698 (E.D. Va. 2005) ("The breadth of this clause [section 111(d)] cannot be overstated. Not only did Congress exempt the Under Secretary from specific employment constraints with respect to airport security screeners contained in the ATSA itself, it took the further step of relieving him from the constraints of '*any* other provision of law.'"); *Tucker v. Ridge*, 322 F. Supp. 2d 738, 743 (E. D. Tex. 2004) ("Because the ATSA explicitly states that the Under Secretary may establish the hiring criteria 'notwithstanding any provision of law,' the hiring criteria are not subject to challenge under the Rehabilitation Act.").

Based on the "sweeping breadth" of section 111(d), *Springs*, 362 F. Supp. 2d at 697, courts have declined to consider claims that TSA employment decisions violate federal statutes or common law. Some courts have found that these claims fail to state a cause of action upon which relief can be granted. *See, e.g.*, *Castro*, 472 F.3d at 1337 (finding that the plaintiff could not sue the Department of Homeland Security for violation of the Rehabilitation Act of 1973 because section 111(d) allows the "TSA [to] implement hiring standards and conditions of employment (including physical standards) for screening personnel, whether or not those standards and conditions of employment are consistent with

the Rehabilitation Act"); *Springs*, 362 F. Supp. 2d at 698 (dismissing the plaintiff's claims asserting that the TSA's reduction-in-force standard violated Federal Aviation Administration procedures and the Veterans' Preference Act of 1944 because "those provisions of law that would otherwise constrain the Under Secretary's discretion . . . do not apply to employment action affecting airport security screeners"); *Tucker*, 322 F. Supp. 2d at 743 (finding that the plaintiff "can provide no set of facts in support of his claim which would entitle him to relief" because "Congress has shielded the Under Secretary's hiring criteria from [the plaintiff's] Rehabilitation Act claims").  Other courts have dismissed such claims for lack of federal-court jurisdiction to review TSA employment decisions. *See, e.g.*, *Conyers*, 388 F.3d at 1382–83 ("Section 111(d) of the ATSA exempts TSA from laws that would otherwise apply to screener positions.  As a consequence, the [Merit Systems Protection] Board is divested of jurisdiction to hear appeals alleging violations of such laws insofar as TSA screener positions are concerned."); *Hawley*, 481 F. Supp. 2d at 91 ("In short, ATSA § 111(d) grants the TSA discretion to incorporate or not incorporate in its [reduction in force] the termination criteria Plaintiffs complain were not incorporated.  This court does not have jurisdiction to review that exercise of discretion.").

Under these authorities, this court either lacks subject-matter jurisdiction over Ray's nonconstitutional challenges to his suspension and alleged discharge, because these are challenges to the employment decisions that are not within this court's jurisdiction to review, or Ray fails to state a cause of action on which relief can be granted.  Under either approach,

the motion to dismiss is granted as to Ray's claims that require this court to review the decision to suspend and the alleged decision to discharge Ray as a TSA screener.

Ray asserts that the DHS's employment decisions also violated section 552a(g)(1) of the Privacy Act. (Docket Entry No. 8 at 12). Ray asserts that the DHS failed to maintain his records with sufficient accuracy, "as is necessary to assure fairness" in the employment decisions that were "made on the basis of such a record," violating section 552a(g)(1)(C). Ray also asserts that the DHS failed to comply with section 552a(g)(1)(D) of the Privacy Act when it "disclosed incomplete and false information in revealing the contents of SF 85P without the Optional Form 306 without the written request by, or with the prior written consent of [Ray], the individual to whom the record pertains." (Docket Entry No. 1 at 7).

The DHS moves to dismiss Ray's section 552a(g)(1)(C) claim to the extent that it challenges the TSA's employment decision on the basis of lack of subject-matter jurisdiction. The DHS argues that if "the gravamen of a plaintiff's Privacy Act claim is that documents relied upon in his or her termination or disciplinary proceedings contained errors, that claim is exclusive to the agency proceedings for such purposes." (Docket Entry No. 8 at 13). Citing *Douglas v. Agricultural Stabilization & Conservation Service*, 33 F.3d 784, 785 (7th Cir. 1994), the DHS contends that Ray "may not use the Privacy Act to re-litigate the substance of agency decisions." (*Id.* at 13).

Section 552a(g)(1)(C) provides a civil remedy whenever an agency:

> fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the

> qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual.

5 U.S.C. § 552a(g)(1)(C); *see also Bettersworth v. F.D.I.C.*, 248 F.3d 386, 392 (5th Cir. 2001). Under section 552a(g)(1)(C), "the plaintiff has the burden of proving: (1) the agency's failure to maintain accurate records, (2) adverse agency action resulting from inaccurate records, and (3) the agency action was willful or intentional." *McClellan v. Bureau of Prisons*, No. 5:05CV194DCB-JCS, 2006 WL 2711631, at *5 (S.D. Miss. Aug. 2, 2006) (citing *White v. Office of Personnel Mgmt.*, 840 F. 2d 85, 87 (D.C. Cir. 1988)). "The Privacy Act permits a person to contest the accuracy of administrative records; it does not authorize relitigation of the substance of agency decisions." *Watson v. Caldera*, 254 F.3d 70, at *1 (5th Cir. 2001) (citing *Castella v. Long*, 701 F. Supp. 578, 584–85 (N.D. Tex. 1988); *Reinbold v. Evers*, 187 F.3d 348, 360 (4th Cir. 1999); *Douglas v. Agric. Stabilization & Conservation Serv.*, 33 F.3d 784, 785 (7th Cir. 1994)).

In his complaint, Ray does not allege that the TSA maintained inaccurate records of the SF 85P form or the OF 306 form. Rather, the thrust of Ray's complaint is that the TSA violated section 552a(g)(1)(D) by knowingly disclosing "false and incomplete information in revealing the contents of SF 85P without the Optional Form 306" without Ray's consent. (Docket Entry No. 1 at 7). To the extent that Ray's section 552a(g)(1)(C) claim seeks review of the TSA's decision to suspend him indefinitely without pay based on his failure to disclose his previous offenses on the SF 85P form, this court lacks jurisdiction over this claim and it

fails to state a cause of action on which relief can be granted. *See Conyers*, 388 F.3d at 1382–83; *Hawley*, 481 F. Supp. 2d at 91. To the extent that Ray asserts that the TSA failed to maintain accurate records and that this failure led to an adverse employment decision under section 552a(g)(1)(C), he has failed to state a claim because he has failed to plead facts that support a claim to relief. Ray's claim that the DHS failed to maintain accurate records under section 552a(g)(1)(C) in deciding to suspend him is dismissed under both Rules 12(b)(1) and 12(b)(6).

The DHS's motion to dismiss Ray's nonconstitutional federal-law challenges to the TSA's employment decisions on the ground that this court lacks subject-matter jurisdiction over such challenges is granted. This court does have subject-matter jurisdiction over Ray's claim that the DHS violated section 552(a)(g)(i)(D) of the Privacy Act by disclosing his records without his consent, because this disclosure claim does not require review of the DHS's decision to suspend him indefinitely without pay and is not precluded by ATSA section 111(d). This court also has subject-matter jurisdiction over Ray's constitutional challenges to the employment decisions. *See Am. Fed'n of Gov't Employees Local 1 v. Stone*, 502 F.3d 1027, 1029 (9th Cir. 2007) (finding that "the statutory scheme governing TSA security screeners does not express a clear intention on the part of Congress to preclude judicial review of screeners' constitutional claims"); *Coleman v. Ridge*, No. C-05-0431 EMC, 2008 WL 108895, at *1–2 (N.D. Cal. Jan. 8, 2008) ("Under the ATSA and the TSA letter, screeners, unlike other TSA employees, have no administrative remedies to challenge their termination. They may, however, obtain judicial review of constitutional claims

sounding in equity where the plaintiff has no other remedy."). The DHS's motion to dismiss the Privacy Act and constitutional claims under Rule 12(b)(6) – rather than Rule 12(b)(1) – is addressed below.

## IV. The DHS's Motion to Dismiss Under Rule 12(b)(6)

### A. Ray's Privacy Act Claims

The DHS moves to dismiss Ray's claim that the disclosure of his records violated the Privacy Act. This claim does not require review of the Agency's employment decisions concerning a screener. The DHS asserts that dismissal is required because the Act allows an agency to make an unauthorized disclosure of a record for a routine use or if "the use of such record is for a purpose which is compatible for the purpose for which it was collected." 5 U.S.C. § 552a(a)(7). The DHS argues that the OIG was authorized "to disclose the results of its investigation [into Ray's record] to the U.S. Attorney's office" because "there was sufficient indication of a violation [of law] to merit a referral to the U.S. Attorney's office." (Docket Entry No. 20). Ray argues that the DHS disclosed his record in an "incomplete and false" form without his prior written consent and that "[t]he purpose of the [Privacy Act] is to restrict the publication of defamatory and private information," which "is precisely what occurred here." (Docket Entry No. 11 at 19–20).

The Privacy Act generally prohibits the unauthorized release by a government agency of an individual's records. 5 U.S.C. § 552a (1996). The Act "safeguards the public from unwarranted collection, maintenance, use and dissemination of personal information contained in agency records by allowing an individual to participate in ensuring that his

records are accurate and properly used." *Jacobs v. Nat'l Drug Intelligence Ctr.*, 423 F.3d 512, 515 (5th Cir. 2005) (internal punctuation omitted) (quoting *Henke v. U.S. Dep't of Commerce*, 83 F.3d 1453, 1456 (D.C. Cir. 1996)). The Act states as follows:

> No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be—
>
> . . .
>
> (3) for a routine use as defined in subsection (a)(7) of this section and described under subsection (e)(4)(D) of this section . . .

5 U.S.C. § 552a(b). The Privacy Act allows the injured person to bring a civil action against the agency that failed to comply with the law. 5 U.S.C. §§ 552a(g)(1)(C), (D). A plaintiff may recover damages for a violation of the Act under the following provisions:

> 4) In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of—
>
> (A) actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; and
>
> (B) the costs of the action together with reasonable attorney fees as determined by the court.

5 U.S.C. §552(g)(1)(4). A damages claim under subsection (g)(1)(D) for a violation of the Privacy Act's central prohibition against disclosure has four elements: (1) the information is covered by the Act as a "record" contained in a "system of records"; (2) the agency disclosed the information; (3) the disclosure had an adverse effect on the plaintiff (an element with two components: (a) an adverse-effect standing requirement; and (b) a causal nexus between the disclosure and the adverse effect); and (4) the disclosure was willful or intentional. *See Quinn v. Stone*, 978 F.2d 126, 131 (3d Cir. 1992).

The DHS asserts that the OIG "has duly promulgated a notice for its system of records." (Docket Entry No. 8 at 20). This 2005 notice states that the OIG "is updating and republishing a Privacy Act system of records within OIG Headquarters for its investigative files." Notice of revised Privacy Act systems of records, 70 Fed. Reg. 58448 (Oct. 6, 2005). The system includes investigative files, which contain "reports of investigation resulting from allegations of misconduct or violations of law with related exhibits, statements, affidavits, records or other pertinent documents . . . obtained during investigations." *Id.* at 58449. The 2005 notice further states:

> In addition to those disclosures generally permitted under 5 U.S.C. 552a(b) of the Privacy Act, all or a portion of the records or information contained in this system may be disclosed outside DHS as a routine use pursuant to 5 U.S.C. 552a(b)(3) as follows:
>
> > (A) To an appropriate Federal State, territorial, tribal, local, or foreign law enforcement agency, licensing entity, or other appropriate authority charged with investigating, enforcing, prosecuting, or implementing a law (criminal, civil, administrative, or regulatory) where

> DHS becomes aware of an indication of a violation or potential violation of such law or where required in response to a compulsory legal process. . . .

*Id.* at 58450. The DHS argues that "these authorities plainly authorized OIG to disclose the results of its investigation to the U.S. Attorney's Office." (Docket Entry No. 8 at 20).

The record shows that the DHS's disclosure of Ray's records to the U.S. Attorney's Office was a routine use under the Privacy Act. Ray has failed to state a claim for wrongful disclosure under the Privacy Act. The DHS's motion to dismiss this claim is granted.

**B. Ray's Constitutional Claims**

Ray asserts that the DHS "initiated and/or caused criminal prosecution of Plaintiff," "acted with malice in the commencement of the proceeding," and "lacked probable cause for the proceeding." (Docket Entry No. 1 at 9). Ray further alleges that he "has been stigmatized and publicly adjudicated guilty of a crime of dishonesty and fraud, which he did not commit." (*Id.* at 10). The DHS moves to dismiss this claim on the ground that Ray "has failed to sue an individual defendant for any Constitutional violations." (Docket Entry No. 8 at 16). The DHS also notes that granting Ray leave to amend his complaint against the agency would be futile because the FTCA "expressly preserves the sovereign immunity of the United States with respect to claims arising out of 'false imprisonment, false arrest, malicious prosecution, abuse of process, libel, [and] slander" among other intentional torts, except when committed by law enforcement officers." (*Id.* at 15 n.5 (quotations omitted)).

A *Bivens* claim against federal actors mirrors section 1983 actions against state actors. *Izen v. Catalina*, 398 F.3d 363, 367 n.3 (5th Cir. 2005). *Bivens* actions may only be brought

for constitutional violations against government officers in their individual capacities. *Affiliated Prof'l Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999) (dismissing plaintiff's claim for lack of jurisdiction because "[t]here is no indication that the Secretary [of Health and Human Services] is being sued in her individual capacity"). In *Izen*, the plaintiff invoked *Bivens* to assert a claim for malicious prosecution. The Fifth Circuit affirmed summary judgment in favor of the defendants because the plaintiff, in alleging malicious prosecution, had failed to allege a constitutional violation and did not "state a claim under the Fourth Amendment directly." *Id.* at 367. Ray has sued only the Department of Homeland Security. He has not asserted a claim against any government officers acting in their individual capacities. *See Affiliated Prof'l Health Care Agency*, 164 F.3d at 286. The *Bivens* claim against the Agency is dismissed.

In addition to the defect in the party sued, Ray cannot assert a malicious prosecution claim under *Bivens*. "In this circuit, plaintiffs no longer allege a constitutional violation by satisfying the state law elements of malicious prosecution alone." *Izen*, 398 F.3d at 366 (citing *Castellano v. Fragozo*, 352 F.3d 939, 942 (5th Cir. 2003) (en banc), *cert denied*, 543 U.S. 808 (2004). A malicious prosecution claim does not assert a constitutional violation.

Nor can Ray state a claim for a deprivation of substantive due process rights under *Bivens*. The Fifth Circuit has held that a substantive due process claim for a public employee has the following elements: (1) that he had a property interest in his employment; and (2) that the employer's termination of that interest was arbitrary or capricious. *Bolton v. City of Dallas*, 472 F.3d 261, 263 (5th Cir. 2006) (citing *Moulton v. City of Beaumont*, 991 F.2d 227,

230 (5th Cir. 1993)). "A public employer's termination of an employee does not violate substantive due process unless the determination 'so lacked a basis in fact that their decision to terminate him was arbitrary or capricious, or taken without professional judgment.'" *Pastorek v. Trail*, 248 F.3d 1140, at *4–5 (5th Cir. 2001) (citing *Tex. v. Walker*, 142 F.3d 813, 819 (5th Cir. 1988)). Substantive due process "requires only that public officials exercise professional judgment, in a nonarbitrary and noncapricious manner, when depriving an individual of a protected property interest." *Walker*, 142 F.3d at 819 (citing *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 223–26 (1985); *Spuler v. Pickar*, 958 F.2d 103, 107 (5th Cir. 1992)).

The TSA did not terminate Ray's employment when the OIG's investigation revealed that Ray had failed to disclose his previous offenses on the SF 85P form. Rather, he was suspended indefinitely, without pay, on March 21, 2006. Ray submitted his resignation on April 4, 2006.[3] Ray asserts that he did not resign voluntarily but was constructively discharged. The Fifth Circuit has held that "[i]n determining whether an employer's actions constitute a constructive discharge we ask whether 'working conditions [became] so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'" *Aryain v. Wal-Mart Stores Tex. LP*, --- F.3d ----, 2008 WL 2655792, at *4 (5th Cir. July 8, 2008) (quoting *Penn. State Police v. Suders*, 542 U.S. 129, 141 (2004); citing *McCoy*

[3] The Fifth Circuit has held that "a plaintiff may make out a cognizable claim when he alleges particular facts showing that he found himself 'between the Scylla of voluntary resignation and the Charybdis of forced termination.'" *Holden v. Knight*, 155 Fed. Appx. 735, at *3 (5th Cir. 2005) (quoting *Fowler v. Carrollton Pub. Library*, 799 F.2d 976, 981 (5th Cir. 1986)). Ray has not argued that he resigned to avoid termination of his employment.

*v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007)). Ray asserts that he resigned because "it afforded him the ability to withdraw his Thrift Savings Plan contributions so that he could pay his attorney and to defend himself against the federal charges." (Docket Entry No. 1 at 11). Ray is alleging that he resigned because he needed the money in his retirement plan to pay his legal bills. Ray's claim appears to be that his resignation was involuntary because it was under economic duress.

A government employee claiming that he resigned involuntarily must show that: (1) he involuntarily accepted the terms of his resignation; (2) under the circumstances, he had no other alternative but to resign; and (3) the circumstances of his resignation were the result of the government's coercive acts. *United States v. Thompson*, 749 F.2d 189, 194 (5th Cir.1984). A court presumes that "a seemingly voluntary resignation was, in fact, voluntary." *Id.* "Duress is not measured by the employee's subjective evaluation of a situation. Rather, the test is an objective one." *Id.* (internal punctuation omitted) (quoting *Christie v. United States*, 518 F.2d 584, 587 (1975). Duress or coercion is not established by the fact that the employee was forced to choose between unpleasant alternatives, such as termination or criminal charges. *Curtis v. City of N. Richland Hills, Tex.*, No. 4:03-CV-243-A, 2004 WL 614981, at *3 (N.D. Tex. Feb. 26, 2004) (citing *Hargray v. City of Hallandale*, 57 F.3d 1560, 1568 (11th Cir. 1995)); *see also Van Arsdel v. Tex. A&M Univ.*, 628 F.2d 344, 346 (5th Cir. 1980) (declining to find that "duress is present whenever a party is confronted with a dilemma"). The fact that the employee perceived his only option to be resignation is irrelevant. *Curtis*, 2004 WL 614981, at *3. Economic pressures are not sufficient to make

a resignation involuntary. (Docket Entry No. 1 at 11). *See, e.g.*, *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 175 n.7 (D.D.C. 2007) ("Economic pressure and even the threat of considerable financial loss are not duress . . . ." (internal punctuation omitted; citing *Johnson, Drake, & Piper, Inc. v. United States*, 531 F.2d 1037, 1043 (Ct. Cl. 1976)); *Crawford v. Wilmette Pub. Sch. Dist. 39*, No. 05 C 3205, 2007 Wl 257636, at *8 (N.D. Ill. Jan. 25, 2007) (noting that duress "is not placing a person in a difficult bargaining position or the pressure of financial circumstance" (citation omitted)).

Ray also stated in his complaint that he appealed his suspension to the TSA's Disciplinary Review Board. He was able to present evidence and arguments to the Board, which found that the TSA had erred in suspending him indefinitely without pay. Because Ray had access to adequate legal remedies available to challenge his suspension, his decision to resign was not the product of duress. *See Cranford v. McNesby*, No. 3:07cv203/MCR/MD, 2008 WL 2567653, at *7 (N.D. Fla. June 23, 2008) (finding that plaintiff failed to show "that the circumstances surrounding his resignation permitted no other alternative to resigning" because he had "the option of being terminated and then challenging his termination before the CSB [Civil Service Board] and, if necessary, before the Circuit Court of Escambia County"); *Peralta v. Peralta Food, Corp.*, 506 F. Supp. 2d 1274, 1282 (S.D. Fla. 2007) (noting that "threatened action cannot constitute duress, when there are adequate legal remedies available with which to challenge it").

Ray resigned and has not pleaded a basis for finding constructive discharge. Ray has failed to state a claim for a violation of his substantive due process rights. The DHS's motion to dismiss Ray's substantive due process claim is granted.

Ray also argues that he was "deprived of his job, reputation, living and good name without due process." (Docket Entry No. 11 at 25). Ray asserts that before his meeting with Director Vela, he "was not informed of the nature of the allegations against him, given opportunity to consult counsel or given opportunity to review the charges for the impromptu hearing." (Docket Entry No. 1 at 8). This is a procedural due process claim. Ray's complaint alleges that the TSA provided him a "pre-decisional opportunity to meet with the DHS deciding official to discuss the charge" and a hearing before TSA's Disciplinary Review Board. (Docket Entry No. 18). The DHS asserts that "[t]hese procedures easily satisfy the requirements of notice and an opportunity to be heard."

Procedural due process entitles a public employee with a property right in his employment to receive notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. See *Fowler v. Smith,* 68 F.3d 124, 127 (5th Cir. 1995). "The essential requirements of procedural due process under the Constitution are notice and an opportunity to respond." *Finch v. Fort Bend Indep. Sch. Dist.*, 333 F.3d 555, 562 (5th Cir. 2003); *see also Mathews v. Eldridge*, 424 U.S. 319, 333 ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." (internal punctuation and citation omitted)). Procedural due process is "a flexible concept whose contours are shaped by the nature of the individual's and

the state interests in a particular deprivation." *Caine v. Hardy*, 943 F.2d 1406, 1411–12 (5th Cir. 1991). The Fifth Circuit has explained the flexible nature of due process, as follows:

> Though the state must, for instance, accord a public employee 'some kind of hearing' before termination, this may consist of no more than a meeting at which the employer states the grounds for dismissal and gives the employee an opportunity for rebuttal. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). The brief pre-termination hearing is satisfactory so long as it is coupled with more formal post-termination proceedings, for this allocation of the burden of a hearing protects both the employee and the employer's interest in maintaining an efficient workplace.

*Caine*, 943 F.2d at 1412.

Ray's complaint shows that he had an opportunity to meet with Director Vela about his failure to disclose his previous offenses on the SF 85P form. Ray alleged that Vela "afforded an opportunity to respond to the allegations." (Docket Entry No. 1 at 8). Ray also alleged that he appealed the TSA's decision to suspend him indefinitely without pay to the TSA's Disciplinary Review Board. In the appeals process before the Board, Ray had an opportunity to present evidence and arguments. The Board determined that the TSA erred in suspending Ray indefinitely before he was indicted and ordered that his employment record be amended to reflect this decision.

Ray argues that he did not have an opportunity to "consult counsel" or "review the charges" against him before he met with Vela. (Docket Entry No. 1 at 8). The Supreme Court has held that "'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action." *Loudermill*, 470 U.S. at 545 (citing *Mathews*, 424 U.S. at

343).  Ray's complaint reflects that he was given "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."  *Id.* at 546.  He was also afforded a full postsuspension hearing, at which he presented evidence and arguments.  Ray has failed to state a claim for a procedural due process violation.

The DHS's motion to dismiss Ray's *Bivens* claims and substantive and procedural due process claims is granted.

## V.    Conclusion

The DHS's motion to dismiss Ray's common-law tort claims on the ground that he failed to exhaust administrative remedies is denied, but the motion to dismiss the tort claims for suspension without pay, discharge, defamation, malicious prosecution, and invasion of privacy is granted for lack of subject-matter jurisdiction.  The DHS's motion to dismiss Ray's nonconstitutional federal claims that challenge the Agency's employment decisions – wrongful suspension and alleged discharge and Privacy Act violations – are granted for lack of subject-matter jurisdiction and failure to state a claim.  The DHS's motion to dismiss Ray's claim that the DHS violated section 552a(g)(1)(C) of the Privacy Act is granted for both lack of subject-matter jurisdiction and failure to state a claim.  The DHS's motion to dismiss Ray's *Bivens* claims for substantive and procedural due process violations and for malicious prosecution is granted for failure to state a claim.

Ray may amend, consistent with this opinion and with the Rules of Civil Procedure, no later than **August 25, 2008**.

SIGNED on August 7, 2008, at Houston, Texas.

Lee H. Rosenthal
United States District Judge